**IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF VIRGINIA: NORFOLK DIVISION**

**UNITED STATES OF AMERICA,**

**v.**

                                            **4:19CR00047-037**

**SCOTT SUBER,**

**DEFENDANT'S SENTENCING MEMORANDUM**

COMES NOW the Defendant, by counsel, and submits the following for the Court's consideration.  Defendant specifically submits that a variance of time served would be fair and just under 18 U.S.C § 3553(a).

**I.      Procedural History**

Scott Suber is before the Court having pled guilty to one count of bank fraud in violation of 18 U.S.C. § 1344.  The maximum penalty for this offense is a maximum term of imprisonment for 30 years, a fine of $1,000,000, restitution, forfeiture of assets, a special assessment, and a maximum supervised release term of 5 years.

Mr. Suber immediately acknowledged his behavior and cooperated with authorities through multiple meetings.  He is eager to continue that.  He entered a guilty plea at his initial appearance, waived an indictment, and agreed to the statement of facts on December 9, 2020.  Sentencing is now scheduled for May 20, 2021.   The Sentencing Guidelines are currently calculated at 33-41 months.   There is an unresolved objection based on the amount of loss that may result in an advisory sentencing range of 27-33 months.

**II.      Sentencing Factors**

As a result of the Supreme Court's decision in *United States v. Booker*, 543 U.S.  220

1

(2005), the federal sentencing guidelines are no longer mandatory but advisory.   In this pleading, Defendant addresses some of the factors contained in Title 18 U.S.C.  Section 3553 and argues for a minimal term of incarceration.

In determining the Defendant's sentence, the Court is to consider:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed;

(3) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(4) to afford adequate deterrence to criminal conduct;

(5) to protect the public from further crimes of the defendant; and

(6) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(7) the kinds of sentences available;

(8) the kinds of sentences and the sentencing range established for [the offense];

(9) any pertinent policy issued by the Sentencing Commission;

(10) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(11) the need to provide restitution to any victims of the offense.

18 U.S.C.  Section 3553.   The Court is to impose a sentence that is sufficient, but not greater than necessary, to comply with the above factors.   18 U.S.C.  Section 3553.

2

### III.   A Variance is Warranted under 18 U.S.C. § 3553(a)

This was a stupid crime that has destroyed Scott Suber's life and will forever have a negative impact on his future.  Scott Suber placed his trust in the wrong people.  He was the owner of a small business called Debris or Not Debris.  It was a property preservation company that handled landscaping and property services.  The company was in existence since February 2019, long before the Paycheck Protection Program was established.

Scott Suber is 39 years old and has a 16-year-old son.  His father is a retired law enforcement officer from New York City and later Brevard County Florida.  His mother is a retired Transit Police Officer from New York City.  His parents separated when he was young, but he has always been taught the value of hard work.  Scott graduated High School, worked two jobs, and took college classes.  He has always been interested in running his own business, and developed a mentor relationship with a person who had many small businesses.

When the pandemic struck Mr. Suber was living in his own residence and running his landscaping business.  He heard there were relief loan programs available for small businesses.  Mr. Suber tried to apply for the Economic Injury Disaster Loan (EIDL) but his application was rejected because some of his paperwork was missing.  Mr. Suber took out unemployment benefits and spoke to his mentor.  The mentor indicated he could help Mr. Suber get approved for the Paycheck Protection Program but that there would be a fee of 20% in order to help.  There were other people the mentor knew that were getting people approved.  There was no indication about the amount of the loan.  Mr. Suber trusted him and asked what he needed.  The list was small.  Just the name address and Employer Identification Number for his current business, and a business bank account that must exist since February 2020.

3

The bank account for Debris or Not Debris was complicated.  Originally there was a partner for the company.  The partner had opened a business account for the company at the Bank of America.  Bank of America had a history of not recognizing Mr. Suber's equal access to the corporate account.  The partner left the business.  Mr. Suber closed the Bank of America business account before February and opened a new business account at Wells Fargo in April of 2020.

Mr. Suber provided the information needed for his application to his mentor.  He included a business checking account statement from the new Wells Fargo account, and backdated the document to indicate it had existed in February 2020.  He did that out of fear and trying to keep his business alive.  Mr. Suber still did not know anything else about what would be included in his loan application to include the number of employees and the monthly wages claimed.  He wanted to be approved and altered a document, but had no idea about the magnitude of the fraud that was done.  There were other very similar applications made by these same people.

The Debris or Nor Debris application was submitted online by another person from an IP address in another state.  The electronic signature that appears on the application is not Mr. Suber's.  The claim of $140,000 in monthly wages was not made by Mr. Suber.  The Quarterly Federal Tax Return used to claim 8 employees and $420,000 in quarterly pretax wages was not created or provided by Mr. Suber.  Mr. Suber still did not know if he would be approved.  He didn't know what was in his application.  He was prepared to pay 20% to his mentor for his help in the process.

When $350,000 was deposited into the bank account, Mr. Suber was scared and

4

confused.  These people knew who he was and expected payment.  He was collecting unemployment and trying to keep his business running.  His regret know is that he didn't put an end to it right then.  The fee from the mentor and the others increased to around 30%.  Mr. Suber did as he was told and paid a total of 105,000 to the mentor.  He then sought to organize the proceeds and get to work so that he could repay the loan.  He researched and made efforts to buy foreclosed homes and architectural plans in order to "flip houses" and hoped to move his business in that direction.  He made formal bids on several properties.  He went to Las Vegas with his mentor but insists he used his unemployment benefits to fund that trip.

Law enforcement soon discovered the fraud and seized $165,000.12 from the defendant's bank accounts.  He cooperated with law enforcement on multiple occasions.  He turned over an additional $17,000 to investigators.  He deeply regrets his actions.  He knows he has shamed his family and ruined his business and personal reputations.

He writes to the Court: "I would like to express my genuine remorse and deep regret for my actions.  The bulk of my foreseeable future will be spent rectifying the monetary and emotional damage I have imposed.  My best days since that money deposited into my account have been tainted by severe stress and anxiety.  The bad days have been absolute nightmares.  I took fear and uncertainty of being a new entrepreneur in an emerging global crisis and made things exponentially worse." (letter from Scott Suber).

Scott Suber's family and loved ones have submitted letters on his behalf.  Each one paints a picture of a loving and caring person that takes genuine interest in helping others.  His 16-year-old nephew writes about Mr. Suber giving him a summer a job and driving through the tunnel early each morning to get the nephew to work.  His mother describes how happy Scott was in his

landscaping business and how lovingly he helped care for his grandmother.  "He even laid on the hospital bed with her when she began "seeing visions" speaking and laughing with her." (letter from Linda Zuhri).  His letters from former employees describe a hardworking and responsible person. The mother of his child describes him as an active and loving father.  "We have built a friendship and a family dynamic that most can only dream of.  Scott is not only a great father to our son, but he also shows the same love and support to my 2 daughters my husband and I share, and my stepson.  I am blessed to say, my family can call on Scott for anything and he will be there."  (letter from Constance Steverson).

Scott Suber had an unusual role in the conduct involved in this fraud.  He did not come up with the scheme at the outset.  He was only looking for help.  Mr. Suber and his business were used by fraud designers to perpetrate a huge fraud the exact magnitude of which Mr. Suber himself was unaware.

## IV.   Conclusion

Scott Suber placed his trust in the wrong people.  He was used by people that he thought were helping him.  He trusted someone that he thought was a friend to help his business make it through a global pandemic.  He didn't do himself any favors with providing the bank statement, but he was a brand-new business owner and terrified that he would be out of business soon.  He had no idea the magnitude of the fraud that was perpetrated.  He did not know what was being submitted on his behalf.  He did not authorize a claim of 8 employees and $140,000 in monthly wages.  When the deposit was made, he was scared.  Rather than call it off, he paid the people responsible and set out to repay the loan.  When law enforcement got involved, he quickly, frequently, and continuously sought to help.  He paid back everything he could, and will

continue to make restitution as part of his sentence.

This is a financial crime.  A just sentence includes financial restitution.  Mr. Suber can't pay restitution while he is incarcerated.  A sentence that places him with a probation officer that can supervise his employment and collect his restitution rather than incarcerate him is sufficient but not greater than necessary.  A sentence that includes a probation officer that can monitor his lines of credit and financial decision making is appropriate.  A sentence that includes home electronic monitoring is sufficient and more beneficial than incarceration.  Allow Mr. Suber to work so that he can repay the money that was taken.  Strict conditions of curfew and limits on the electronic monitor for work purposes only provides general deterrence to the public against future financial crimes.  Mr, Suber has learned his lesson.  Incarceration is not necessary for the purposes of specific deterrence.  Make Mr. Suber pay back the fraud.  He is eager to continue to work with the government to make everyone whole again.  Start that repayment schedule sooner rather than later.  The Court has the authority to grant a variance of probation in this case.  Based on the facts and circumstances of this case it is warranted.  The defense respectfully submits a sentence of strict probations with exacting financial terms and conditions coupled with home electronic monitoring is sufficient, but not greater than necessary, to comply with the sentencing factors of 18 U.S.C. §3553(a).

Respectfully submitted,

By

Of Counsel

Scott F.  Hallauer
VSB No.: 42829
Attorney for Defendant
520 S. Independence Blvd, Suite 210
Virginia Beach, Virginia 23454
757-474-0089 (telephone)
757-474-0692 (fax)
scott@hallauerlaw.net

## CERTIFICATE OF SERVICE

I certify that on May 12, 2021, I electronically filed the foregoing with the Clerk of Court

using the CM/ECF system, which will send a notification (NEF) to:

| | |
|---|---|
| Alan Salsbury | Tara Gill |
| Special Assistant United States Attorney | U.S.  Probation Officer |
| Office of the United States Attorney | U.S.  Probation Office |
| 101 West Main Street, Suite 8000 | 600 Granby Street |
| Norfolk, Virginia, 23510 | Norfolk, Virginia 23510 |

Scott F.  Hallauer
VSB No.: 42829
Counsel for Defendant
520 S. Independence Blvd, Suite 210
Virginia Beach, Virginia 23454
757-474-0089 (telephone)
757-474-0692 (fax)
scott@hallauerlaw.net

8